# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT M. WILLIAMS, and all others similarly situated, <br><br>              Plaintiff, <br>    v. <br><br> COSTCO WHOLESALE CORPORATION, et al. <br><br>              Defendants. | Civil No. 02cv2003 IEG (AJB) <br><br> **ORDER GRANTING:** <br><br> **(1) CLASS CERTIFICATION;** <br><br> **(2) FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** <br><br> **(3) MOTION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE PAYMENT.** |

Currently before the Court are Plaintiff Scott M. Williams' ("Williams") Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Class Representative Service Payment, filed on June 14, 2010. [Doc. Nos. 72, 73.] For the reasons set forth below, the Court **GRANTS** Plaintiff's Motions.

## *Background*

The facts of this case are known to the Court and the parties and need not be repeated herein.

///
///

## I. Procedural Background

Plaintiff filed suit on July 17, 2002 in San Diego County Superior Court alleging violations of California and federal overtime laws by Defendant Costco Wholesale Corporation ("Costco"). Plaintiff alleged that Costco misclassified him, and others similarly situated, as exempt from overtime pay and failed to pay appropriate overtime in violation of the Fair Labor Standards Act ("FLSA"), California Labor Code § 510, and California Code of Regulations § 11070. Plaintiff also alleged that Costco "is an employer engaged in commerce and subject to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq." (Compl. ¶ 6.)

On October 9, 2002, Costco timely removed the case to this Court on federal question jurisdiction based upon the FLSA claim. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1441. On January 8, 2003 Plaintiff filed a First Amended Complaint ("FAC") in which he eliminated any claims under FLSA, effectively terminating any federal claim presented in the Complaint. [Doc. No. 12.] On January 30, 2003, Plaintiff filed a motion to remand the case to state court. [Doc. No. 15.] This Court granted Plaintiff's motion to remand on June 10, 2003. [Doc. No. 22.] Costco filed a Notice of Appeal as to that decision on June 20, 2003. [Doc. No. 24.] The Court thereafter stayed the proceedings pending the appeal. [Doc. No. 41.]

On February 20, 2007, the 9th Circuit entered judgment reversing this Court's order granting the motion to remand. [Doc. No. 47.] However, the Court stayed the proceedings once again on the joint stipulation of the parties, due to a pending California state court action, *Randall v. Costco Wholesale Corp.*, No. BC 296369 (Cal. Super. Ct. L.A. County, filed May 27, 2003) ("Randall Action"), which asserted certain overlapping claims with the present action. [Doc. No. 54.] The Court lifted the stay on September 11, 2009, upon receiving notice that the state court had approved settlement of the Randall Action, effectively resolving the overlapping claims. [Doc. No. 59.] Plaintiff filed a notice of settlement in the present case on September 11, 2009. [Doc. No. 60.]

## II. The Proposed Settlement

Pursuant to the proposed settlement, the class members include any person employed by Costco between July 17, 1998 and May 26, 1999 (the "Settlement Period") in California as a

department manager in the bakery, deli, and meat departments. (Settlement Agreement and Release, Ex. 1 at 3 [hereinafter Settl. Agr.].) Costco agreed to pay an aggregate sum of $440,000 (the "Gross Settlement Amount"), which includes all payments to class members, the payment of a service fee to the named plaintiff, attorneys' fees, all employer taxes except for the 6.2 percent Social Security tax, and administration costs, if any, up to $25,000. (Sett. Agr. at 5.) The Gross Settlement Amount is non-reversionary, except that Costco may retain funds based on uncashed checks. (*Id.*) The funds will be distributed to individual class members on a pro rata basis based on the number of weeks during the Settlement Period in which the class member had an active pay code ("Workweeks") and the last effective pay rate during the Settlement Period. (*Id.* at 4, 7.)

Costco agreed not to oppose Class Counsel's request for an award of costs and attorneys' fees not to exceed $110,000 of the Gross Settlement Amount and a service fee for Plaintiff Scott Williams up to $5,000. (*Id.* at 10-11.) Costco has also agreed to exercise reasonable means to locate class members. (*Id.* at 9.) Within thirty days of the Court's preliminary approval of the settlement, the claims administrator sent class members notice of the settlement and an opportunity to opt out of the settlement class. (*Id.*) The Settlement Agreement provided that class members are able to opt out of the settlement within thirty days of the notice mailing; any class member who does not timely serve an objection within this time period shall be deemed to waive any objection to the settlement. (*Id.* at 9-10.)

In exchange for these awards, each final settlement class member will release Costco and its associates from all claims arising out of the facts alleged in this action relating to unpaid overtime wages, unlawful deductions, conversion, wage-statement violations, record-keeping violations, and "waiting time" penalties or other statutory penalties relating to the class member's work as a meat, bakery, or deli manager during the Settlement Period. (*Id.* at 11-12.)

**III.    Preliminary Approval of the Settlement**

On March 4, 2010, the Court preliminarily certified the class for settlement purposes, appointed class counsel, granted preliminary approval of the settlement, and ordered Plaintiff to disseminate notice of the settlement to class members. [Doc. No. 68.] On April 6, 2010, the

Claim Administrator sent the notice of class settlement to 220 class members via first class mail. (Keough Decl. ¶ 4.) The notice provided class members with an estimate of their settlement payment, as well as an opportunity to participate in the settlement, opt out of the settlement, or object to the settlement. (*Id.*, Ex. A.) Out of the 220 notice packets mailed, 22 were returned by the U.S. Postal Service as undeliverable. (*Id.* ¶ 5.) As of June 14, 2010, the Claim Administrator had remailed 21 packets to updated addresses. (*Id.*) The Claim Administrator has not received any requests for exclusion from the settlement from any class members. (*Id.* ¶ 6.)

## *Discussion*

When the parties reach a settlement agreement prior to class certification, the court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "'fundamentally fair, adequate, and reasonable.'" *Id.* (citations omitted). Accordingly, in the present case, the Court will first examine the propriety of class certification, followed by the fairness of the settlement agreement, and will then address the questions of attorneys' fees and class representative service payment.

**I.   Class Certification**

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, the Court had previously preliminarily certified the following class: "a person Costco has employed during the Settlement Period in California as a department manager in any of the following ancillary businesses: Bakery, Deli, and Meat." (*See Williams v. Costco Wholesale Corp., et al.*, No. 02-CV-2003-IEG (AJB), 2010 WL 761122, at \*\*2-5 (S.D. Cal. Mar. 4, 2010). At that time, the Court concluded that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). *See id.* at \*\*2-4. The Court also found that the proposed class satisfied the predominance and superiority requirements of Rule 23(b)(3). *See id.* at \*\*4-5. Having reviewed those elements again, the Court adopts its prior analysis in this regard. Accordingly, because

Plaintiff has satisfied the requirements of both Rule 23(a) and Rule 23(b)(3), the Court **GRANTS** certification of the class for the purposes of settlement.

## II.     The Settlement

Rule 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" *Staton*, 327 F.3d at 959 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). To make this determination, the court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) "'the risk, expense, complexity, and likely duration of further litigation;'" (3) "the risk of maintaining class action status throughout the trial;" (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See id.* (citations omitted). In addition, the settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).

### A.     <u>The strength of Plaintiff's case, the risk, expense, and likely duration of further litigation, and the risk of maintaining class action status throughout the trial</u>

Plaintiff asserts that the proposed settlement is both fair and reasonable in light of Defendant's available legal and factual grounds for defending against the asserted claims.  For example, Plaintiff contends that, absent settlement, Defendant would have asserted a defense that Plaintiff and the class members are exempt from overtime compensation requirements.  (Pl. Mem. of P. & A. 21.)  Such a defense would present a serious threat to Plaintiff's claims, as well as create uncertainty as to the appropriateness of class certification.  (*Id.* at 21-22.) Plaintiff also asserts that the risk of further litigation is significant, as is the likely duration of further litigation.  (*Id.* at 23.)  Given these risks, the Court agrees that the actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery through full adjudication.

///

### B. The amount offered in settlement

In the present case, the proposed settlement yields a gross settlement fund of $440,000. The gross settlement amount includes all payments to class members, any service fee for Plaintiff, attorneys' fees, most employer taxes, and excess administration costs or litigation costs. (Pl. Mem. of P. & A. 11.) Class members' awards will vary based on their hours worked and pay rate during the settlement period, but the majority of class members will receive approximately $1,700 each. (Coughlin Decl. ¶¶ 47, 49.) The settlement was negotiated to compensate class members for working an average of 2.75 overtime hours per work week. (Pl. Mem. of P. & A. 14.) Based on this, Plaintiff calculated that total claimed losses amounted to $429,845. (*Id.* 15.) The net settlement amount, as outlined in the proposed settlement, is approximately $325,000, which constitutes roughly 75.6 percent of claimed losses. The Court finds the amount offered in settlement to be adequate. *See, e.g.*, *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a wage and hour class action for 25 to 35% of the claimed damages to be reasonable in light of the uncertainties involved in the litigation). Accordingly, the Court finds the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C. The extent of discovery completed and the stage of the proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982)).

In the present case, the parties appear to have engaged in substantial and exhaustive informal and formal discovery. First, the parties engaged in extensive discovery in the related *Randall* matter in Los Angeles Superior Court. (Coughlin Decl. ¶ 4.) Second, through informal and formal discovery in this case, Plaintiff's counsel was able to identify the number of class members in this matter, their average salaries and job descriptions, the average regular rate calculations, and the number of full time equivalents. (*Id.*)

Further, the parties engaged in extensive settlement discussions throughout the course of this case, including participation in formal mediation in 2003. (*Id.* ¶ 30.) The parties were unable to resolve the matter at that time, but they recommenced settlement negotiations in the summer of 2009, after the *Randall* action had been resolved. (*Id.* ¶¶ 38-41.) Plaintiff filed a Notice of Settlement in September 2009, after which the parties spent several months preparing the settlement documents. Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh heavily in favor of granting final approval.

### D. The experience and views of counsel

Class counsel has significant experience in employment litigation, having litigated similar class actions against other employers, including wage and hour overtime matters and misclassification cases. (Pl. Mem. of P. & A. 23; Coughlin Decl. ¶¶ 62-66.) Class counsel considers the settlement to be fair, reasonable, and adequate in light of his experience, the information obtained through discovery, and the risks and costs of further litigation. (Coughlin Decl. ¶ 50.) Accordingly, because counsel believes the present settlement is both fair and adequate, this also weighs in favor of granting final approval.

### E. The reaction of the class members to the proposed settlement

After dissemination of the class notice to the 220 members, which provided each class member with the terms of the settlement and with an option to opt-out or file an objection, not one class member has filed an objection or a request for exclusion. (Keough Decl. ¶ 6.) The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed no opposition). Accordingly, the reaction of the class members weighs in favor of granting final approval.

///

///

### F. Collusion between the parties

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. *Staton*, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

First, the $5,000 service fee for Plaintiff Williams does not to appear to be the result of collusion. The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Williams has protected the interests of the class and exerted considerable time and effort in maintaining this action for the past eight years, providing important information and documents, assisting in drafting of the initial and amended complaints, and participating in mediation and settlement negotiations. (Coughlin Decl. ¶ 57.) The class has benefitted from these actions by, *inter alia*, receiving a settlement that represents an approximate 75 percent recovery on its claims.

Finally, the attorneys' fees also do not appear to be the result of collusion. Plaintiffs may simultaneously negotiate the merits and attorneys' fees. *Staton*, 327 F.3d at 971. In the present case, the settlement agreement provides that Plaintiff's counsel, Frank J. Coughlin and Earl R. Wallace, would recover an award of attorneys' fees up to $110,000. As discussed in more detail below, the Court finds reasonable the recovery of attorneys' fees sought by Plaintiff's counsel.

For the foregoing reasons, the Court finds that the settlement in this case appears to be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *Staton*, 327 F.3d at 959. Accordingly, the Court **GRANTS** Plaintiff's motion for final approval of the settlement.

///

///

**III.    Attorneys' Fees**

The settlement agreement provides that Plaintiff's counsel, Frank J. Coughlin and Earl R. Wallace, would recover an award of attorneys' fees up to $110,000.  Parties to a class action may appropriately negotiate the payment of attorneys' fees and costs in conjunction with the settlement of the action itself. *See Evans v. Jeff D.*, 475 U.S. 717, 734-35 (1986).

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Ninth Circuit has established a "benchmark" award of 25 percent of the common fund.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301, 1311 (1990).

Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Nonetheless, an explanation is necessary when the district court departs from the "benchmark" of 25 percent of recovery. *Powers*, 229 F.3d at 1256-57. The Court notes that the award sought in this case equals 25 percent of the common fund.  Nonetheless, the Court examines each of these factors in turn.

First, the results achieved in this case were favorable. Class members were able to recover approximately 75 percent of their claimed losses. Second, as detailed above, the risks of litigation were real and substantial. Third, the complexity and duration of the case, coupled with the intensity of settlement negotiations, weighs in favor of awarding the 25 percent "benchmark." Fourth, class counsel took this case on a contingent fee basis and had to forego

other financial opportunities to litigate it for more than eight years. Fifth, the request for attorneys' fees in the amount of 25 percent of the common fund falls within the typical range of 20 percent to 50 percent awarded in similar cases, and is lower than many other awards where counsel worked on a contingent basis. *See, e.g., Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million wage and hour class action); *Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and hour class action); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action). Finally, no class members have objected to class counsel's intent to seek attorneys' fees.

For all of the foregoing reasons, the Court finds that the attorneys' fees and costs requested are reasonable.[1]

**IV.     Enhancement award for class representative**

Finally, the $5,000 service fee award for Plaintiff Williams also appears to be reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

In the present case, the above factors weigh in favor of approving the service award requested. Plaintiff Williams has protected the interests of the class and exerted considerable time and effort in maintaining this action for the past eight years, providing important information and documents, assisting in drafting of the initial and amended complaints, and

---

[1] The Court also notes that the class counsel's lodestar in this case–i.e., the amount billed to date–already equals $290,500. (*See* Coughlin Decl. ¶ 54.) The "lodestar," however, is only a cross-check on the reasonableness of the fee award. *See, e.g., Vizcaino*, 290 F.3d at 1050 & n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."). Because the lodestar amount in the present case is higher than the award sought by counsel, this is an indicator of the reasonableness of a fee award of $110,000.

participating in mediation and settlement negotiations. (Coughlin Decl. ¶ 57.) Plaintiff fully participated in all aspects of the case. (*Id.*) The class has benefitted from these actions by, *inter alia*, receiving a settlement that represents an approximate 75 percent recovery on its claims. Finally, no class members have objected to Plaintiff's intent to seek an enhancement award of $5,000.

The $5,000 incentive award is also well within the acceptable range awarded in similar cases. *See, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation"); *Van Vranken*, 901 F. Supp. at 300 (approving an award of $50,000 for the named plaintiff). Accordingly, the Court finds the service fee award requested to be reasonable.

### *Conclusion*

For the foregoing reasons, the Court: (1) **GRANTS** certification of the applicable class; (2) **GRANTS** final approval of the settlement; (3) **GRANTS** the request for award of attorneys' fees and costs and **AWARDS** class counsel attorneys' fees in the amount of $110,000.00; and (4) **GRANTS** the request for a service fee award and **AWARDS** Plaintiff Williams a class representative enhancement award in the amount of $5,000.

**IT IS SO ORDERED.**

**DATED: July 7, 2010**

                                            *Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

cc: All Counsel of Record